IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
EL DORADO DIVISION

RONALD L. RIBBLE                                                                                    PLAINTIFF

V.                                              CASE NO. 05-CV-1122

ALCOA, INC.                                                                                           DEFENDANT

<u>**MEMORANDUM OPINION**</u>

Before the Court is a Motion to Stay Proceedings and Compel Arbitration filed by Defendant Alcoa, Inc. (Doc. 12). Plaintiff Ronald Ribble has responded. (Doc. 18). Alcoa has replied to Ribble's response. (Doc. 21). The Court finds the matter ripe for consideration.

**I. FACTS**

Ribble filed a state court complaint on December 28, 2005, against Alcoa, alleging claims for breach of contract, anticipatory breach of contract, estoppel, and detrimental reliance based upon the company's application of a long-term incentive plan. Alcoa removed this matter to the United States District Court for the Western District of Arkansas and filed its original answer and affirmative defenses on January 6, 2006. (Doc. 3) On November 10, 2006, Ribble filed an amended complaint (Doc. 20) that was answered by Alcoa on November 27, 2006 (Doc. 22). In its answer to the amended complaint, Alcoa asserted that Ribble's claims are subject to mandatory arbitration. Alcoa and Ribble have exchanged initial disclosures and have engaged in written discovery. Additionally, both Alcoa and Ribble have taken one deposition. Neither party has filed a motion regarding the substantive merits of this case.

Ribble was employed by Alumax, Inc., in Magnolia, Arkansas, from 1970 until 1998. In June 1998, Alcoa gained control of Alumax. Ribble continued to work for Alcoa until his retirement in August 2001. Ribble worked as a human resource manager. In October 1993,

Alumax introduced a long-term incentive plan (the Alumax Plan) that provided to participants the opportunity to earn additional compensation through certain performance incentives. Pursuant to the Alumax Plan, Ribble was granted stock options to purchase shares of Alumax stock in December 1994, December 1995, December 1996, and December 1997. When Alcoa assumed control of Alumax, pursuant to the change in control provisions, previously unvested Alumax options outstanding on September 1, 1998, were automatically converted into Alcoa options.

Under the terms of the Alumax Plan, each of the options had a term of ten years from its date of grant and could only be exercised by a current employee. However, the Alumax Plan made provision for exercise of the option within three years of an employee's retirement as long as the original expiration date had not expired. The Alumax Plan contained an arbitration provision stating that "any dispute or controversy arising under or in connection with this Plan shall be settled exclusively by arbitration."

Effective May 1, 2004, Alcoa adopted the "2004 Alcoa Stock Incentive Plan" (the Alcoa Plan). The Alcoa Plan contained no provision for accelerated expiration of options after an employee's retirement. Further, the Alcoa Plan contained no arbitration provision.

In December 2004, Ribble attempted to exercise the Alcoa option that was originally granted by Alumax in December 1994. Alcoa refused to allow him to exercise this option, asserting that all Alcoa options originally granted to Ribble under the Alumax Plan had expired three years from his retirement date. Ribble subsequently brought suit against Alcoa seeking to enforce these options. Ribble and Alcoa do not agree as to which terms and conditions control Ribble's stock option grants. Ribble asserts that the Alcoa Plan controls, and Alcoa asserts that

the Alumax Plan controls.

## II. DISCUSSION

There is a strong federal policy favoring arbitration, and arbitration agreements are to be enforced unless a party can show that it will not be able to vindicate its rights in the arbitral forum. *Faber v. Menard, Inc.*, 367 F.3d 1048, 1052 (8th Cir. 2004). In reviewing arbitration clauses, this Court must ask (1) whether there is a valid arbitration agreement and (2) whether the particular dispute falls within the terms of that agreement. *Id*.

A.  <u>A Valid Arbitration Agreement</u>

This Court will first examine whether there is a valid arbitration agreement. The Alumax Plan contains an arbitration provision stating that "any dispute or controversy arising under or in connection with this Plan shall be settled exclusively by arbitration." Ribble argues that there is no valid arbitration agreement because (1) the stock options granted under the Alumax Plan are now administered by the Alcoa Plan and (2) even if the Alumax Plan does control, the language of the arbitration provision in the Alumax Plan does not mandate arbitration.

Whether an arbitration agreement is valid is a matter of state contract law. *Id*. Arbitration agreements are examined in the same way as other contractual agreements, and the same rules of construction and interpretation apply to arbitration agreements as apply to agreements in general. *See Keymer v. Management Recruiters Int'l, Inc.*, 169 F.3d 501 (8th Cir. 1999); *Alltel Corp. v. Summer*, 360 Ark. 573, 576, 203 S.W.3d 77, 79 (2005).

*1. Stock options granted by the Alumax Plan are still governed by that Plan.*

The Alcoa Plan provides that all awards granted under a "prior plan" or any "predecessor plan" are to be administered under the terms of the Alcoa Plan. Ribble argues that the Alumax

Plan is a prior plan or predecessor plan to the Alcoa Plan and that stock options granted under this predecessor Alumax Plan are to be administered by the Alcoa Plan. Ribble further asserts that, because the Alcoa Plan contains no arbitration clause, there is no valid arbitration agreement. The Court does not agree.

The Alcoa Plan and the Alumax Plan are separate and distinct stock option plans. Following the Alcoa acquisition, the Alumax Plan was never amended, restated, or changed. The two plans are reflected in different documents and are maintained and administered separately by Alcoa. The Alumax Plan was specifically incorporated by reference into each of Ribble's option agreements. A September 1998 addendum to the Alumax Plan stated that each option was subject to the provisions of the plan under which it was granted. None of the Alcoa stock option plans incorporate the Alumax Plan. Thus, the "predecessor" or "prior" plans that the Alcoa Plan contemplates can only refer to previous stock option plans offered by Alcoa and not the separate and distinct Alumax Plan.

2. *The arbitration provision in the Alumax Plan requires arbitration.*

As an alternative argument as to why there is no valid arbitration agreement, Ribble asserts that the arbitration provision in the Alumax Plan does not require the parties to submit a dispute to arbitration because the Alumax Plan provides for both arbitration and litigation. The Alumax Plan provides that "[a]ny dispute or controversy arising under or in connection with the Plan shall be settled exclusively by arbitration ..." and that "[j]udgment may be entered on the arbitrators' award in any court having jurisdiction." The Plan further states that the parties to the Plan consent to the jurisdiction of any court having jurisdiction and waive any objection to such jurisdiction. Ribble contends that the clear language of the Plan does not require submission of a

dispute to arbitration and allows the parties to have the option to pursue disputes under the Alumax Plan through either arbitration or litigation.  This Court does not agree.

Under Arkansas law, whenever parties to a contract express their intention in clear and unambiguous language, the court must construe the writing in accordance with its plain meaning. *Douglas v. U.S. Tobacco Co.*, 670 F.2d 791, 795 (8th Cir. 1982).  Here, the Alumax Plan provides that any dispute arising under the Plan "*shall* be settled *exclusively* by arbitration." (Emphasis added.)  However, Ribble isolates the language regarding jurisdiction and concludes that, because the Alumax Plan references jurisdiction, the Plan must provide for both arbitration and litigation.  This is not the case.  Reading the language regarding jurisdiction in its context, one can see that the language referencing jurisdiction merely explains how an arbitrators' award can be reduced to judgment and explains where a party may contest an arbitrators' award.  When the sentences regarding arbitration and jurisdiction are reasonably read together, it is clear that the intent is for all disputes arising under the Alumax Plan to be settled exclusively by arbitration.  *See Buchanan v. Little Rock Sch. Dist. of Pulaski County, Ark.*, 84 F.3d 1035, 1039 (8th Cir. 1986) (stating that, if there is a reasonable interpretation that gives meaning and effect to all provisions of a contract, such interpretation is preferred over interpretation that gives effect to portions of a contract and leaves other provisions without meaning).  Thus, it is clear from the plain language of the Alumax Plan that the arbitration agreement mandates arbitration as an exclusive recourse for resolving disputes.

Under Arkansas law, the essential elements of a contract or an agreement are: (1) competent parties, (2) subject matter, (3) legal consideration, (4) mutual obligations, and (5) mutual agreement.  *Showmethemoney Check Cashers, Inc. v. Williams*, 342 Ark. 112, 119–20, 27

S.W.3d 361, 366 (2000).  Here, the Court finds that all five elements have been met and that a valid agreement to arbitrate exists under the Alumax Plan.

### B.  The Scope of the Arbitration Agreement

Next, the Court must determine whether the particular dispute falls within the scope of the agreement to arbitrate.  In other words, the Court must decide whether the parties agreed to arbitrate the particular disputes involved in this case.  *See Medcam, Inc. v. MCNC*, 414 F.3d 972, 974 (8th Cir. 2005).  The Court finds that the arbitration clause found in the Alumax Plan encompasses Ribble's claims.  The arbitration clause applies to "[a]ny dispute or controversy arising under or in connection with this Plan[.]"  This broadly worded arbitration clause applies to *all* disputes regarding the Alumax Plan.  Ribble's claims for breach of contract and detrimental reliance arise from an interpretation and application of the Alumax Plan, and there is no question that this particular dispute falls within the scope of the arbitration agreement.

### C.  Waiver

Finally, Ribble asserts that Alcoa should not be allowed to request arbitration so late into the judicial proceedings and that Alcoa has waived its right to enforce the arbitration agreement.  Alcoa did not file a motion to compel arbitration immediately after Ribble filed his complaint.  Instead, Alcoa filed its Motion to Stay Proceedings and to Compel Arbitration in its answer to Ribble's amended complaint.  To establish a waiver, Ribble must establish that Alcoa (1) knew of an existing right to arbitrate, (2) acted inconsistently with that right, and (3) prejudiced Ribble by these inconsistent acts.  *Dumont v. Saskatchewan Gov't Ins.*, 258 F.3d 880, 886 (8th Cir. 2001).  When considering these factors, the Court will resolve in favor of arbitration any doubts

concerning the allegation of waiver. *Stifel, Nicolaus & Co. v. Freeman*, 924 F.2d 157, 158 (8th Cir. 1991).

Here, Alcoa does not dispute the fact that it knew the Alumax Plan contained an arbitration provision. Moving now to whether Alcoa acted inconsistently with its right to arbitrate, the Eight Circuit Court of Appeals has stated a party acts inconsistently with its right to arbitrate if it substantially invokes the litigation machinery before asserting its right to arbitrate. *Ritzel Communications, Inc. v. Mid-American Cellular Telephone Co.*, 989 F.2d 966 (8th Cir. 1993). The parties in the instant case have exchanged initial disclosures and written discovery, and each party has taken one deposition. The Court has not been called upon to rule on any substantive or determinative issues. Alcoa had not sought to litigate the merits of any of Ribble's claims when it filed its motion to compel arbitration. Thus, the Court finds that Alcoa did not act inconsistently with its right to arbitrate.

Even if Alcoa had acted inconsistently with its right to arbitrate, Ribble has not been prejudiced by Alcoa's actions, which is the third element that must be met to establish waiver. *See Stifel*, 924 F.2d at 158. "Prejudice may result from lost evidence, duplication of efforts, use of discovery methods unavailable in arbitration, .... or litigation of substantial issues going to the merits." *Id*. "Delay in seeking to compel arbitration does not itself constitute prejudice." *Id*.

Applying these factors to the instant case, this Court concludes that Ribble was not prejudiced; thus, Alcoa did not waive its contractual right to arbitration. Although there was some pretrial litigation activity, such as pleadings and discovery, no substantive issues were litigated. It is likely that the discovery conducted will be usable and helpful in arbitration.

## III. CONCLUSION

For reasons discussed herein and above, the Court finds that Alcoa's Motion to Stay Proceedings and Compel Arbitration should be and hereby is **GRANTED**. An order of even date, consistent with this opinion, shall issue.

**IT IS SO ORDERED**, this 15th day of March, 2007.

                                                        /s/ Harry F. Barnes
                                            Hon. Harry F. Barnes
                                            United States District Judge